# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

DARRYL MOODY,                                    :
    *Plaintiff,*                          :
                                              :
    v.                                   :        CIVIL ACTION NO. 21-CV-3885
                                              :
TRACEY LAVALLEY-HILL,                            :
    *Defendant.*                          :

## MEMORANDUM

**PAPPERT, J.**                                              **OCTOBER 12, 2021**

Plaintiff Darryl Moody, an inmate currently incarcerated at FCI Fort Dix, filed this lawsuit pursuant to 42 U.S.C. § 1983 alleging that Tracey LaValley-Hill of the Pennsylvania Parole Board violated his civil rights.[1]  (ECF No. 1.)  Moody seeks leave to proceed *in forma pauperis*.  For the following reasons, the Court will grant Moody leave to proceed *in forma pauperis* and dismiss his Complaint in its entirety pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

I[2]

While on parole in connection with a state conviction, Moody was arrested on January 14, 2015, on drug and firearm charges.  (*See* ECF No. 1 at 1.)[3]  He asserts that "a detainer was lodged against my person immediately the same day."  (*Id.*)  Although

---

[1] LaValley-Hill's job title is Director Parole Services Division, Wants & Notices, Extradition Unit, Communications and Field Support Bureau of Central Services.  (*See* ECF No. 1-1 at 8.)  The Court adopts the pagination supplied by the CM/ECF docketing system.

[2] The factual allegations are taken from Moody's Complaint, exhibits attached thereto, and public dockets, of which the Court may take judicial notice.  *See Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006).

[3] Moody does not identify the state court conviction for which he was on parole.

he alleges that he was arrested on January 14, 2015 for violations of federal law, it appears that Moody was arrested by the Pennsylvania State Police.  *See id.*; *see also United States v. Moody*, Crim. A. No. 15-191 at ECF No. 1.  He was later indicted by a federal grand jury, on May 6, 2015, on drug and firearm charges.  (Crim. A. No. 15-191 at ECF No. 1.)  A writ was issued and Moody was transferred from the George W. Hill Correctional facility and taken into federal custody on May 8, 2015.  (*See id.* at ECF Nos. 3, 4, 11.)  Moody stipulated to pretrial detention.  (*See id.* at ECF No. 8.)  It appears new state charges that had been filed against Moody in connection with his January 2015 arrest were withdrawn because the federal authorities were proceeding against him for the same conduct.  After several trial continuances, Moody pled guilty to Counts 2 and 4 of the federal superseding indictment and was subsequently sentenced to a term of 120 months on Count 2, and 60 months on Count 4, to run concurrently.  (*See id.* at ECF Nos. 13, 48.)

According to Moody, his due process rights were violated because the Pennsylvania Parole Board had knowledge that he violated his parole contract and failed to offer "a dispositional review or expedited revocation hearing request" on his violation of parole at the time he was arrested.  (ECF No. 1 at 1.)  He contends that "[i]nstead of my person serving the remainder of the State's sentence left of the parole contract, a[n] Officer for the Parole agency approached me on January 14, 2015 and coerced me into signing a waiver document for a parole hearing until the outcome of my new federal case . . . knowing that his/her actions were going against the agency's own code of conduct or laws which is a breach of contract."  (*Id.* at 2.)[4]

---

[4] Moody did not attach a copy of the waiver agreement to his Complaint.

2

While serving his federal sentence, Moody received a detainer action letter dated December 28, 2017.  (*See id.* at 2; *see also* ECF No. 1-1 at 1, 2.)  Subsequently, Moody sought to inform the Pennsylvania Parole Board of the harm caused by the existence of the detainer.  (*See* ECF No. 1 at 2.)  On April 26, 2021, Moody sent a Petition for Warrant Dispositional Review or Expedited Revocation Hearing Request to the Pennsylvania Parole Board requesting a dispositional review or revocation hearing on the parole warrant that was issued, and the detainer that was lodged, as a result of Moody's federal charges.  (*See* ECF No. 1-1 at 3-4.)  In this Petition, Moody requested that the Board withdraw the detainer because it impeded his ability to participate in rehabilitative programs during his federal incarceration.  (*Id.* at 3.)  According to Moody, the "warrant/detainer has adversely affected [his] ability to achieve 'Superior Programming.'"  (*Id.*)  The Petition asserted that Moody's due process rights were violated because he was not given a timely revocation hearing.  (*Id.*)  When he did not receive a response to his Petition, Moody sent a letter to the Pennsylvania Parole Board informing the office that it had acquiesced and tacitly agreed by default to Moody's Petition.  (*Id.* at 5.)

Having failed to receive a response from the Pennsylvania Parole Board, Moody asked a relative to contact LaValley-Hill by email.  (*See* ECF No. 1 at 2.)  LaValley-Hill responded that Moody "is not available to have his revocation hearing for his new conviction until he is physically returned to a PA State Correctional Institution.  Once PA is notified of his availability to be released from his current holding facility, he will be extradited to return to a SCI and will be seen by PA Parole Board for his revocation hearing for his new convictions."  (*See* ECF No 1-1 at 8.)

Moody contends that when he was arrested on January 14, 2015, he was "coerced . . . to sign a waiver agreement, then fleeced . . . to the Federal Government knowing that [he] did not complete the Parole agreement with the State of Pennsylvania." (ECF No. 1 at 2.)  Moody avers that he has been harmed because he is unable to participate in rehabilitative programs during his federal sentence due to the detainer lodged against him.  (*Id.*)  He asserts that his Fifth Amendment due process rights have been violated, as well as his Sixth Amendment right to counsel for his "defense to the procedure." (*Id.*)  In addition, Moody alleges that his inability to participate in rehabilitative programs constitutes cruel and unusual punishment in violation of the Eighth Amendment and that he has been denied equal protection of the laws by the Pennsylvania Parole Board in violation of his rights secured by the Fourteenth Amendment.  (*Id.* at 3.)  Moody seeks monetary damages, as well as injunctive relief in the form of lifting of the detainer.  (*Id.* at 2-3.)

## II

The Court grants Moody leave to proceed *in forma pauperis* because it appears that he is incapable of paying the fees to commence this civil action.[5]  Accordingly, 28 U.S.C. § 1915(e)(2)(B)(ii) applies, which requires the Court to dismiss the Complaint if it fails to state a claim.  Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint

---

[5] However, as Moody is a prisoner, he will be obligated to pay the filing fee in installments in accordance with the Prison Litigation Reform Act.  *See* 28 U.S.C. § 1915(b).

4

contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted); *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021) ("'At this early stage of the litigation,' '[the Court will] accept the facts alleged in [the *pro se*] complaint as true,' 'draw[] all reasonable inferences in [the plaintiff's] favor,' and 'ask only whether [that] complaint, liberally construed, . . . contains facts sufficient to state a plausible [] claim.'" (quoting *Perez v. Fenoglio*, 792 F.3d 768, 774, 782 (7th Cir. 2015)). Conclusory allegations do not suffice. *Iqbal*, 556 U.S. at 678.

As Moody is proceeding *pro se*, the Court construes his allegations liberally. *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)). "This means we remain flexible, especially 'when dealing with imprisoned *pro se* litigants[.]'" *Id.* (quoting *Mala*, 704 F.3d at 244). The Court will "apply the relevant legal principle even when the complaint has failed to name it." *Id.* However, "'*pro se* litigants still must allege sufficient facts in their complaints to support a claim.'" *Id.* (quoting *Mala*, 704 F.3d at 245).

III

The vehicle by which federal constitutional claims may be brought in federal court is Section 1983 of Title 42 of the United States Code, which provides in part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

5

42 U.S.C. § 1983.  "Section 1983 is not a source of substantive rights," but is merely a means through which "to vindicate violations of federal law committed by state actors." *See Gonzaga Univ. v. Doe*, 536 U.S. 273, 284-85 (2002).  "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law."  *West v. Atkins*, 487 U.S. 42, 48 (1988). Liberally construing Moody's Complaint, the Court understands him to allege due process claims, as well as a claim for a violation of his Sixth Amendment right to counsel, a claim for a violation of the cruel and unusual punishment clause of the Eighth Amendment, and a Fourteenth Amendment equal protection claim.  Despite that liberal construction, Moody has not alleged a plausible basis for any claims against LaValley-Hill.

## A

Moody asks the Court to quash the detainer currently lodged against him and appears to seek damages based on harm caused by its issuance.  A prisoner cannot use § 1983 to challenge the fact or duration of his confinement or to seek immediate or speedier release.  *Preiser v. Rodriguez*, 411 U.S. 475 (1973).  "He must seek federal habeas corpus relief (or appropriate state relief) instead."  *Wilkinson v. Dotson*, 544 U.S. 74, 78 (2005).  To the extent Moody asks the Court to invalidate the detainer lodged against him, his claims are subject to dismissal and must be brought in a properly filed habeas corpus petition.  *See Mokone v. Fenton*, 710 F.2d 998, 1002 (3d Cir. 1983) (challenge to detainer must be brought in a habeas proceeding).  Furthermore, to the extent Moody seeks damages for harm caused by the detainer, those claims are not

currently cognizable in a § 1983 action because success on those claims would imply the invalidity of the detainer, which has not yet been invalidated through proper channels. *See Heck v. Humphrey*, 512 U.S. 477 (1994); *see also McBride v. O'Brien*, 646 F. App'x 277, 278 (3d Cir. 2016) (*per curiam*) ("To the extent that McBride alleges that his confinement on the detainer violates federal law, a favorable outcome would necessarily demonstrate the invalidity of his detention."); *Jackson v. Alt*, 236 F. App'x 850, 851 (3d Cir. 2007) (*per curiam*) (plaintiff who sought damages for alleged due process and equal protection violations arising from what he views as the improper issuance of a parole violator warrant, and the lodging of that warrant as a detainer, could not proceed under § 1983 because he has not successfully challenged the warrant in any state or federal proceeding) (citing *Heck*, 512 U.S. at 487); *Munofo v. Alexander*, 47 F. App'x 329, 331 (6th Cir. 2002) ("Munofo's § 1983 claim is not cognizable under *Heck* because 'a judgment in favor of the plaintiff would necessarily imply the invalidity' of the parole detainer at issue here.");  *Antonelli v. Foster*, 104 F.3d 899, 900-01 (7th Cir. 1997) (*Heck* applied to damages suit for arrest based on federal parole violator warrant); *Zavalunov v. White*, Civ. A. No. 18-2438, 2020 WL 754415, at *6 (M.D. Pa. Feb. 13, 2020) (*Heck* "applies [to] detainer actions").[6]

---

[6] In the habeas context, a petitioner challenging a detainer must first exhaust state court remedies.  *See Iwanicki v. Dunn*, Civ. A. No. 17-486, 2020 WL 2495856, at *2 (W.D. Pa. Apr. 2, 2020) (finding that to the extent the habeas petitioner may also be challenging the Parole Board's detainer that it lodged against him, he also failed to exhaust his state court remedies because he could have, but did not, challenge the detainer by filing a petition for writ of mandamus in the Commonwealth Court's original jurisdiction) (citing *Bellochio v. Com., Pennsylvania Bd. of Probation and Parole*, 559 A.2d 1024, 1025 (Pa. Cmmw. Ct. 1989), *report and recommendation adopted*, Civ. A. No. 17-486, 2020 WL 2490031 (W.D. Pa. May 14, 2020); *Shaw v. Warden FCI McKean*, Civ. A. No. 17-253, 2018 WL 5297785, at *1 (W.D. Pa. Oct. 25, 2018) (habeas petitioner must first exhaust state court remedies before filing a § 2254 petition seeking to have detainer lifted).

B

Moody's Complaint in part concerns what he deems the failure of the Pennsylvania Parole Board to offer "a dispositional review or expedited revocation hearing request" at the time he was arrested, and the alleged resultant inability to participate in rehabilitative programs in his current confinement.  (ECF No. 1 at 1-2.)  The Court understands Moody to allege that he did not receive a timely parole revocation hearing despite having requested one while serving his sentence in federal custody.  (*See* ECF No. 1 at 1-2.)  The Supreme Court has held that claims challenging the constitutionality of parole procedures may be brought pursuant to § 1983.  *See Wilkinson*, 544 U.S. at 76, 78-84; *see also Singleton v. Superintendent Camp Hill SCI*, 747 F. App'x 89, 93 (3d Cir. 2018) (*per curiam*) ("To the extent that Singleton is claiming that he did not receive a timely parole revocation hearing – a procedural issue – his claim is not foreclosed by *Heck*.").

A parolee facing revocation of parole has a conditional constitutional liberty interest in remaining free.  *See Morrissey v. Brewer*, 408 U.S. 471, 483-84 (1972).  Due process requires that a parole revocation hearing be held "within a reasonable time after the parolee is taken into custody."  *Id.* at 488.  A defendant generally is entitled to two separate hearings prior to revocation of parole or probation.  *See Gagnon v. Scarpelli*, 411 U.S. 778, 782, 786 (1973).  The purpose of the first, pre-revocation hearing (a *Gagnon I* hearing) is to determine that probable cause exists to believe that a violation has been committed.  *Commonwealth v. Ferguson*, 761 A.2d 613, 617 (Pa. Super. Ct. 2000).  The second, "more comprehensive hearing" (a *Gagnon II hearing*), is to determine whether facts exist to justify revocation of parole or probation.  *Id.*

"However, the [revocation] hearing requirement is 'not triggered when the warrant is placed as a detainer at an institution where the . . . parolee is already in custody awaiting disposal of an intervening charge or serving a sentence for a crime committed while on supervised release.'" *Singleton*, 747 F. App'x at 93 (quoting *United States v. Wickham*, 618 F.2d 1307, 1309, n.3 (9th Cir. 1979)).  Rather, the duty to provide a revocation hearing arises only when the parolee "is taken into custody as a parole violator by execution of the warrant," because "execution of the warrant and [consequent] custody under that warrant [is] the operative event triggering any loss of liberty attendant upon parole revocation." *Id.* (citing *Moody v. Daggett*, 429 U.S. 78, 87, 89 (1976)).[7]

Pursuant to the Pennsylvania Parole Board's administrative regulations, "[i]f the parolee is in custody in another state, or in Federal custody, the Board may lodge its detainer but other matters may be deferred until the parolee has been returned to a State correctional facility in this Commonwealth."  37 Pa. Code § 71.5; *see also id.* at § 71.4(1)(i) (if a parolee is confined outside the jurisdiction of the Pennsylvania Department of Corrections, a revocation hearing shall be held within 120 days of the official verification of the return of the parolee to a state correctional facility).[8]  Indeed,

---

[7] "[T]he lodging of a detainer does not amount to execution of the warrant. A detainer is designed merely to provide notice to the institution of confinement that a warrant has been issued and that the [government] intends to consider the question of parole revocation at a later date.  The operative event triggering any loss of liberty attendant upon parole revocation is the execution of the warrant and the concomitant assumption of custody of the parolee." *Bradley v. United States Parole Comm'n*, Civ. A. No. 15-247, 2017 WL 2604267, at *3 (M.D. Pa. May 23, 2017) (internal citations and quotations omitted), *report and recommendation adopted*, Civ. A. No. 15-247, 2017 WL 2592403 (M.D. Pa. June 15, 2017).

[8] Moody alleges that his due process rights were violated when he was not offered a dispositional review or expedited revocation hearing in violation of federal law and

LaValley-Hill advised Moody's relative in her email response to his inquiry that upon completion of Moody's federal sentence, and the execution of the parole warrant, he would be returned to a Pennsylvania state facility where he would receive a parole revocation hearing.  (*See* ECF No. 1-1 at 8.)

Until his release from federal custody, Moody's denial of liberty is the result of his federal conviction on other charges, and not the lodging of the detainer for the Pennsylvania parole violation warrant.  Accordingly, the due process protections of *Morrissey* have not yet been triggered.  *See Singleton*, 747 F. App'x at 93 (Singleton was in custody pursuant to his subsequent Pennsylvania charges, not as a violator of his New York probation, and thus, his due process right to a prompt probation revocation hearing was not triggered until he was taken into custody by New York after pleading guilty to his Pennsylvania crimes); *Underwood v. Pennsylvania Bd. of Prob. & Parole*, Civ. A. No. 19-1634, 2021 WL 1197697, at *4 (M.D. Pa. Mar. 30, 2021) (civil rights plaintiff's due process rights were not triggered while in federal custody because state parole warrant had not yet been executed); *see also Sellers v. Pennsylvania Bd. of Prob. & Parole*, Civ. A. No. 19-4666, 2020 WL 8968104, at *3 (E.D. Pa. Sept. 23, 2020) (finding due process claim brought in § 2254 habeas petition to be meritless because Pennsylvania Parole Board was not required to provide petitioner with a parole violation hearing until he completed his federal sentence, and therefore, issuance of parole detainer and failure to conduct a hearing within 120 days of its issuance or petitioner's federal sentencing did not deprive petitioner of any constitutionally-

---

regulations.  (*See* ECF No. 1 at 1-2.)  However, Pennsylvania law governs in this instance, as Moody was on parole for a state court conviction.

protected rights), *report and recommendation adopted sub nom. Sellers v. Pa. Bd. of Prob. & Parole*, Civ. A. No. 19-4666, 2021 WL 1105337 (E.D. Pa. Mar. 23, 2021).

Moody also contends that the imposition of the detainer and delay in executing the warrant denies him the opportunity to participate in prison rehabilitation or re-entry programs, or to receive a halfway house placement. (*See* ECF No. 1 at 2.) To the extent he seeks to allege a due process violation on this basis, he has failed to allege a plausible claim. The Supreme Court has held that the Due Process Clause is not implicated by "prisoner classification and eligibility for rehabilitative programs," even where an inmate suffers "grievous loss," because "Congress has given federal prison officials full discretion to control these conditions of confinement." *See Moody*, 429 U.S. at 88 n.9. In *Moody*, the Court held that the petitioner had no legitimate statutory or constitutional entitlement sufficient to invoke due process. *Id.*

In this case, absent a protected liberty interest, Moody cannot maintain a due process claim regarding his prison classification due to the existence of the detainer. *See Bailey v. Ebbert*, Civ. A. No. 15- 1554, 2016 WL 11612608, at *2 (M.D. Pa. Aug. 5, 2016) (noting that federal inmate has no constitutional right to a particular classification) (citing *Moody*, 419 U.S. at 88 n.9); *see also  Zavalunov v. Fed. Bureau of Prisons*, Civ. A. No. 19-453, 2020 WL 2036722, at *11 (M.D. Pa. Apr. 28, 2020) (federal inmate did not have due process right to participation in rehabilitative program); *Garcia-Hernandez v. Dep't of Homeland Sec.*, Civ. A. No. 19- 222, 2021 WL 640859, at *2 (W.D. Pa. Jan. 20, 2021) (Congress has given federal prison officials full discretion to control prisoner classification and eligibility for rehabilitative programs in the federal system and petitioner has no legitimate statutory or constitutional entitlement

11

sufficient to invoke due process); *Mathis v. Kauffman*, Civ. A. No. 19-1377, 2019 WL 4594105, at *3 (M.D. Pa. Sept. 20, 2019) (denying habeas relief because petitioner had no protectable liberty interest in his prisoner classification, qualification for rehabilitative programs, or early release and thus could not show a constitutional deprivation as a result of the existence of the parole violator detainer); *Springer v. United States*, Civ. A. No. 10-967, 2010 WL 4235472, at *4 (D.N.J. Oct. 20, 2010) (collateral consequences of a detainer, such as denial of the opportunity to participate in prison rehabilitation programs, do not rise to the level of a constitutional deprivation for which habeas relief can be granted); *Velazquez v. United States Parole Comm'n*, Civ. A. No. 08-0841, 2009 WL 3287387, at *5 (M.D. Pa. Oct. 13, 2009) (rejecting habeas petitioner's claim that due process rights were violated due to detainer and previously unexecuted warrant adversely affecting his prison classification and his ability to participate in certain institutional programs because petitioner has no legitimate statutory or constitutional entitlement sufficient to invoke due process).[9]  For these reasons, Moody's due process claims will be dismissed without leave to amend as he cannot state a claim based on his inability to access programming while incarcerated.

C

Moody also alleges that his rights were violated in connection with the signing of a waiver.  He claims an "Officer for the Parole agency approached me on January 14, 2015, and coerced me into signing a waiver document for a parole hearing until the outcome of my new federal case . . . knowing that his/her actions were going against the

---

[9] Additionally, Moody has no claim against LaValley-Hill regarding his current classification under the circumstances of this case.

agency's own code of conduct or laws which is a breach of contract." (*See* ECF No. 1 at 2.)  Citing the Sixth Amendment and due process, he contends that his rights were violated because he "did not have the assistance of counsel for my defense to the procedure." (*See id.*)

Moody has not alleged a plausible Sixth Amendment claim.  The Third Circuit Court of Appeals has explained that "[a] parole revocation hearing is not a criminal prosecution." *United States v. Manuel*, 732 F.3d 283, 291 (3d Cir. 2013) (citing *Morrissey*, 408 U.S. at 480) ("[T]he revocation of parole is not a part of a criminal prosecution and thus the full panoply of rights due a defendant in such a proceeding does not apply to parole revocations.").  Consequently, "there is no constitutional right to representation by counsel at a parole revocation hearing." *Id.* (citing *Gagnon*, 411 U.S. at 783-90); *see also Pennsylvania Bd. of Prob. & Parole v. Scott*, 524 U.S. 357, 365-76 (1998) (noting that the right to counsel generally does not attach to such proceedings because the introduction of counsel would "alter significantly the nature of the proceeding") (quoting *Gagnon*, 411 U.S. at 787); *Weikel v. Vorous*, Civ. A. No. 17-1573, 2018 WL 3866681, at *4 (D. Del. Aug. 14, 2018) (dismissing as frivolous pursuant to § 1915(e)(2)(B)(i) and § 1915A(b)(1) plaintiff's claim that his constitutional rights were violated when he was not provided counsel at his parole revocation hearing) (citing *Gagnon*, 411 U.S. at 783-90); *Woodall v. Pennsylvania Bd. of Prob. & Parole*, Civ. A. No. 13-816, 2015 WL 8493991, at *7 (M.D. Pa. Dec. 10, 2015) ("[C]ourts in this Circuit have consistently concluded that there is no right to counsel in the parole revocation context and have rejected claims of ineffective assistance of counsel [in habeas corpus cases]."); *Ammouri v. Klem*, Civ. A. No. 06-3887, 2007 WL 1892489, at *5 (E.D. Pa. June 28,

2007) (Generally, a parolee has no constitutional right to counsel at a parole revocation hearing.).  Thus, Moody has not stated a plausible claim that his Sixth Amendment rights were violated in connection with the events of January 2015.[10]

It appears that Moody may be attempting to bring a due process claim based on these events, *i.e.*, based on his execution of a "waiver document for a parole hearing," allegedly under coercion, without the benefit of counsel.  However, it is not clear what Moody is alleged to have waived here, in what context the waiver was obtained, and what procedures Moody is either challenging or claiming were not followed.  Indeed, it is not clear that any parole hearing occurred in January 2015 and Moody's Complaint suggests that his revocation hearing will occur after he is returned to state custody.  Moreover, although Moody alleges that he was coerced into signing the waiver, he does not support his conclusory allegation with facts explaining the context in which the waiver was given or why it is plausible to conclude his waiver was involuntary or that counsel was required.  Again, Moody did not attach a copy of the waiver to his Complaint.  Since it is not clear what Moody waived, and the context in which that

---

[10] In Pennsylvania, the Public Defender Act, the Administrative Agency Law, and the administrative regulations of the Pennsylvania Parole Board give parolees the right to representation in revocation proceedings.  *See Colbert v. Pennsylvania Parole Board*, No. 654 C.D. 2020, 2021 WL 1961929, at *3 (Pa. Commw. Ct. May 17, 2021).  That is, the "[r]ight to counsel in a state parole violation hearing is not based on either the state or federal constitutions, but rather on statutory law, case law and regulatory law." *Williams v. Pennsylvania Bd. of Prob. & Parole*, No. 1494 C.D. 2007, 2008 WL 9398704, at *4 (Pa. Commw. Ct. Apr. 24, 2008) (citing *Worthington v. Pennsylvania Bd. of Prob. & Parole*, 784 A.2d 275 (Pa. Cmmw. Ct. 2001)).  Consequently, redress for the violation of such a right does not lie in a § 1983 action.  Moreover, "the absence of counsel at a *Gagnon I* hearing will not result in the reversal of a subsequent parole revocation if the error is harmless beyond a reasonable doubt." *Ferguson*, 761 A.2d at 620 (citing *Commonwealth v. Fowler*, 419 A.2d 34, 35 (1980)).

waiver was obtained, the factual contours of this claim are not entirely clear and the
Court will permit Moody to amend this claim.

D

Moody also alleges his Eighth Amendment rights have been violated in that he is
"suffering cruel and unusual punishment by not having the opportunity to participate
in the existing rehabilitative programs in the Bureau of Prisons or Re-entry programs
of the Bureau of Prisons, because of the existing Warrant/Detainer that's being lodged
against" him.  (ECF No. 1 at 3.)  This claim isn't plausible either.  *See Dodd v. Derose*,
Civ. A. No. 15-1088, 2015 WL 7271809, at *3 n.2 (M.D. Pa. Sept. 28, 2015) (finding that
plaintiff's claim that the detainer, which prevents him from posting bail, amounts to
"cruel and unusual punishment" in violation of the Eighth Amendment lacks merit,
as"[i]mprisonment itself is clearly not cruel and unusual punishment.") (citing *Lee v.
Pennsylvania Bd. of Prob. & Parole*, 467 F. Supp. 1043, 1046 (E.D. Pa. 1979), *report and
recommendation adopted*, Civ. A. No. 15-1088, 2015 WL 7252461 (M.D. Pa. Nov. 17,
2015).  Additionally, Moody's allegations that he is unable to participate in preferred
programming does not allege an objectively serious condition sufficient to state an
Eighth Amendment claim. *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981) (explaining
that the Eighth Amendment is violated where a prisoner is deprived of "the minimal
civilized measure of life's necessities").

E

Moody also asserts an equal protection claim.  "The Equal Protection Clause of
the Fourteenth Amendment commands that no State shall 'deny to any person within
its jurisdiction the equal protection of the laws,' which is essentially a direction that all

persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (quoting *Plyler v. Doe*, 457 U.S. 202, 216 (1982)).  To establish an equal protection violation, a prisoner must allege "that he was treated differently than other similarly situated inmates, and that this different treatment was the result of intentional discrimination based on his membership in a protected class." *Mack v. Warden Loretto FCI*, 839 F.3d 286 (3d Cir. 2016) (citing *Hassan v. City of New York*, 804 F.3d 277, 294, 298 (3d Cir. 2015)).  To the extent his allegations may be read as asserting a claim based on a "class of one" theory, he must allege he was intentionally treated differently from other similarly situated inmates and that there was no rational basis for the treatment.  *See Phillips v. Cty of Allegheny*, 515 F.3d 224, 243 (3d Cir. 2008).  "Persons are 'similarly situated' for purposes of an equal protection claim when 'they are alike in all relevant aspects.'"  *Startzell v. City of Philadelphia*, 533 F.3d 183, 203 (3d Cir. 2008) (emphasis omitted).

Here, Moody provides no allegation or factual support for his equal protection claim aside from the general allegation that his rights have been violated.  He alleges that he is "being denied equal protection of the law because the PA Probation and Parole Board are the governing authorities which does have knowledge of the law but has acted contrary to its own understanding."  (*See* ECF No. 1 at 3.)  Because Moody has not alleged that he was treated differently from those similarly situated, his equal protection claim is not plausible.  *See Tillman v. Lebanon Cty. Corr. Fac.*, 221 F.3d 410, 424 (3d Cir. 2000) ("Where there is no discrimination, there is no equal protection violation."); *Collura v. Disciplinary Bd. of Supreme Court of Pa.*, Civ. A. No. 11-5637, 2013 WL 4479141, at *7 (E.D. Pa. Aug. 22, 2013) ("Mr. Collura has failed to identify

any similarly situated individual whom [Defendants] ha[ve] treated differently. . . . Accordingly, Mr. Collura's Equal Protection claim amounts to mere 'general accusations' which are insufficient to prevail on a § 1983 claim."), *aff'd sub nom. Collura v. Maguire*, 569 F. App'x 114 (3d Cir. 2014).

F

A defendant in a civil rights action must be personally involved in the alleged wrongs. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988) (the personal involvement of each defendant in the alleged constitutional violation is a required element and a plaintiff must allege how each defendant was involved in the events and occurrences giving rise to the claims). Indeed, "[b]ecause vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. The personal involvement of a defendant in a § 1983 action may be shown "through allegations of personal direction or of actual knowledge and acquiescence." *Rode*, 825 F.2d at 1207. Moody must allege LaValley-Hill's "personal involvement in the alleged wrongdoing; liability cannot be predicated solely on the operation of respondeat superior." *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005) (quoting *Rode*, 845 F.2d at 1207).

Here, Moody does not allege any factual details about LaValley-Hill's involvement in the lodging of the detainer. Rather, he only alleges that the acts of the Pennsylvania Parole Board to "coerce" him to sign a waiver agreement when he was arrested in January 2015 was "done to [him] by the PA Parole Board under the Director, Tracey LaValley Hill's discretion." (ECF No. 1 at 2.) Thus, Moody has not

17

pled a plausible constitutional claim against LaValley-Hill. *See Underwood*, 2021 WL 1197697, at *3 ("Alleging a mere hypothesis that an individual defendant had personal knowledge or involvement in depriving the plaintiff of his right is insufficient to establish personal involvement.") (citing *Rode*, 845 F.2d at 1208).

To the extent that Moody seeks to assert a claim against LaValley-Hill based on a supervisory liability theory, he has failed to allege a plausible claim. There are "two general ways in which a supervisor-defendant may be liable for unconstitutional acts undertaken by subordinates." *Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 316 (3d Cir. 2014), *reversed on other grounds by Taylor v. Barkes*, 135 S. Ct. 2042 (2015). First, a supervisor may be liable if he or she "with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm." *Id.* (quoting *A.M. ex rel. J.M.K. v. Luzerne Cty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004) (alteration in original)). "Second, a supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in the subordinate's unconstitutional conduct." *Id.* Moody does not allege that LaValley-Hill, with deliberate indifference to the consequences, maintained a policy, practice or custom that resulted in the conduct that allegedly violated Moody's constitutional rights, nor does he allege that LaValley-Hill participated in the alleged improper conduct. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009) (explaining that "a complaint must do more than allege the plaintiff's entitlement to relief," rather, "[a] complaint has to 'show' such an entitlement with its facts.").

IV

For the foregoing reasons, the Court will grant Moody leave to proceed *in forma pauperis* and dismiss his Complaint in its entirety pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).  Moody's request to invalidate the detainer is dismissed without prejudice to him filing a *habeas* petition after exhausting state remedies and his related damages claims are dismissed without prejudice to him reasserting those claims in a new action in the event he is able to invalidate the detainer through proper procedures. *See Curry v. Yachera*, 835 F.3d 373, 379 (3d Cir. 2016).

The Court will dismiss all remaining claims with prejudice because Moody cannot cure the legal deficiencies in those claims, with the exception of a due process claim he may be raising based on the waiver he signed upon his arrest.  Since the factual contours of that claim are too unclear for the Court to address at this time, Moody will be given leave to file an amended complaint as to that claim.  *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002).

An appropriate Order follows.

BY THE COURT:

*/s/ Gerald J. Pappert*
GERALD J. PAPPERT, J.